COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Humphreys and Senior Judge Coleman
Argued at Alexandria, Virginia


MYRON J. TURMAN

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0838-06-4                      JUDGE ROBERT P. FRANK
                                                    SEPTEMBER 25, 2007
COMMONWEALTH OF VIRGINIA



                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                          Jonathan C. Thacher, Judge

          S. Jane Chittom, Appellate Defender (Office of the Appellate
          Defender, on briefs), for appellant.

          Eugene Murphy, Senior Assistant Attorney General (Robert F.
          McDonnell, Attorney General, on brief), for appellee.


       Myron J. Turman, appellant, was convicted in a jury trial of rape in violation of

Code § 18.2-61 and misdemeanor sexual battery in violation of Code § 18.2-67.4.  On appeal

appellant challenges (1) the admissibility of the complaining witness' testimony regarding the

content of an instant message she received, and (2) the trial court's granting of a jury instruction on

flight from the scene.  Finding no error, we affirm the two convictions.

                                    BACKGROUND

       Under settled principles, we review the evidence in the light most favorable to the

Commonwealth.  Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).  That

principle requires us to "discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all

_____
       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

fair inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis and citation omitted).

Appellant and the complaining witness, S.J., had been best of friends for approximately five years. During that time, S.J. was involved romantically with another man. After S.J. broke the relationship off with her boyfriend, she would often turn to appellant for advice and guidance. On one occasion after the break-up, appellant and S.J. engaged in consensual sexual intercourse.

On October 5, 2002, S.J. attended a nightclub in Washington, D.C. While there, she received a cell phone call from appellant, who wanted to know when S.J. would be arriving home at her apartment in Fairfax County. When S.J. arrived at 3:00 a.m., appellant was waiting for her in the parking lot. Uninvited, he followed her inside. Feeling uncomfortable in her eveningwear, S.J. went into the bathroom to change into her pajamas.

While appellant used the bathroom, S.J. laid on her bed. Appellant returned to the bedroom and asked if he could lie down with S.J. S.J. responded that she did not want appellant to do so. When he did, S.J. moved into the living room. Appellant followed, and eventually S.J. asked him to leave, stating that she felt "uncomfortable." S.J. again asked appellant to leave, and rather than doing so, appellant grabbed S.J. in a "bear hug" and carried her into the bedroom. Against S.J.'s protests, appellant proceeded to have vaginal and anal sex with her. S.J. recalled that she was "trying to figure out what in the world was going on, why was this gentleman acting like this." As she was kicking and scratching him, S.J. tried unsuccessfully to grasp the telephone to call police. Upon breaking free, S.J. ran into the living room, screaming at appellant to leave. Once there, she was able to grab a cordless telephone. She said, "I'm going to call the cops if you don't leave. . . ." Appellant responded that he was leaving and asked her

not to call the police. He then lunged at S.J., knocking the phone out of her hand. S.J. ran back into the bedroom and called the police from there. She then heard appellant leave the apartment.

Police stopped appellant within fifteen minutes. Officer John Keenan of the Fairfax Police Department heard appellant tell another officer that he had just come from Prince William County.

A few months after the incident, S.J. received an instant message from "Myron109." S.J. testified that the message stated, "I just wanted to apologize." When she asked him why he did it, "Myron109" responded that he was on ecstasy, that he was very sorry for what he had done, and very sorry for humiliating her. Appellant had contacted S.J. in the past using the screen name "Myron109."

Testifying on his own behalf, appellant admitted having a sexual relationship with S.J. on October 5, 2002, but stated that the encounter was consensual. He also testified that his AOL instant messaging screen name is "Myron109" but that he did not send that particular message to S.J. Appellant said that two friends and his estranged wife also have access to his AOL account.

The trial court ruled that the content of the message from "Myron109" was "case specific" to the incident and admitted it into evidence. Also over appellant's objection, the trial court granted the Commonwealth's proposed jury instruction on flight from the scene of a crime.

This appeal follows.

ANALYSIS

Admissibility of the Instant Message

Appellant contends that S.J.'s testimony regarding the content of the instant message is inadmissible because the Commonwealth was unable to sufficiently identify the sender, the content of the message is hearsay, and its admission violates the best evidence rule. The Commonwealth responds that the message is sufficiently connected to appellant, the statement is

admissible as an exception to the hearsay rule, and S.J. sufficiently explained why a printout of the original instant message was unavailable.

"'The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion.'" Twine v. Commonwealth, 48 Va. App. 224, 230-31, 629 S.E.2d 714, 718 (2006) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988)).

> It is well established . . . that an out-of-court statement by a criminal defendant, if relevant, is admissible as a party admission, under an exception to the rule against hearsay. The identity of the person making the out-of-court statement may be established by either direct or circumstantial evidence. "The measure of the burden of proof with respect to factual questions underlying the admissibility of evidence is proof by a preponderance of the evidence." Witt v. Commonwealth, 215 Va. 670, 674, 212 S.E.2d 293, 296 (1975). The trial court determines these facts, and a jury determines the weight of the evidence and the credibility of the witnesses.

Bloom v. Commonwealth, 262 Va. 814, 820-21, 554 S.E.2d 84, 87 (2001) (other citations omitted).

Appellant first contends that the instant message was not proved to have originated with appellant. We disagree.

Appellant admitted his screen name was "Myron109." Appellant testified that others had access to his AOL "account," yet he never indicated anyone else had access to his personal screen name. Further, appellant's admission to his use of ecstasy is consistent with his unexpected and unusual behavior on the night of the assault. Although no expert testified as to the effects of ecstasy, appellant recognized in the instant message that his personality was altered because of the drug. We note also that S.J. testified that she did not understand "why this gentleman was acting like this" and that she was "in disbelief that I'm going through this with this individual." Moreover, S.J., who considered appellant a best friend of five years, testified

- 4 -

that at the time she thought "[t]his is the person that I would least expect to act like this." Thus, appellant's statement that he was "on ecstasy when he did it" sufficiently identifies him as having knowledge of the rape and as the sender of the message. We believe that the Commonwealth has shown, by a preponderance of the evidence, that appellant was the individual who sent S.J. the instant message.

Appellant next contends that the statement was hearsay, being an out-of-court statement admitted for the truth of the matter. The Commonwealth responds that the statement is a party admission, an exception to the hearsay rule.

"A party relying upon an exception to the hearsay rule for the admissibility of evidence bears the burden of persuading the court that the evidence falls within the exception." Lynch v. Commonwealth, 272 Va. 204, 207-08, 630 S.E.2d 482, 484 (2006).

The Commonwealth proved that appellant was the sender of the message. "Statements made freely by [the accused] which tended to show guilt, when considered with other evidence, [are] admissible against him. Such statements come within the admissions exception to the hearsay rule." Land v. Commonwealth, 211 Va. 223, 229, 176 S.E.2d 586, 590-91 (1970) (citations omitted). In his message, appellant not only apologized for "what he had done," but he acknowledged S.J.'s humiliation and blamed ecstasy for his uncharacteristic behavior. Appellant's admission to using ecstasy acknowledges an additional crime. See Jordan v. Commonwealth, 273 Va. 639, 642, 643 S.E.2d 166, 168 (2007) (noting that ecstasy is a Schedule I controlled substance); Code § 18.2-250 (making it unlawful to possess controlled substances). Clearly, the statement was a party admission that tended to show appellant's guilt. See Bloom, 262 Va. at 820, 554 S.E.2d at 87.

Finally, appellant argues that S.J.'s testimony as to the content of the instant message is not the best evidence as to its existence. Appellant contends that because an instant message is a

"writing" as contemplated by the best evidence rule, the Commonwealth has not sufficiently explained why a printout of the message is unavailable.[1]

The best evidence rule provides that "where the contents of a writing are desired to be proved, the writing itself must be produced, or its absence sufficiently accounted for before other evidence of its contents can be admitted." Randolph v. Commonwealth, 145 Va. 883, 889, 134 S.E. 544, 546 (1926). Only when sufficient evidence discloses that the primary evidence is not available may secondary evidence be admitted. See generally Bradshaw v. Commonwealth, 16 Va. App. 374, 380, 429 S.E.2d 881, 885 (1993) (upholding trial court's refusal to admit secondary oral testimony because no reasonable explanation offered as to the absence of the original document). In general, the sufficiency of the evidence relating to unavailability of the writing is a preliminary question addressed to the sound discretion of the trial court. Id. at 379, 429 S.E.2d at 884.

In this case, S.J. sufficiently explained why she could not produce a written document containing appellant's comments to her. She testified that it never occurred to her to print or save the messages and that, even if it had, she did not know how to perform either task. Any potential written, or saved, statement vanished upon S.J. turning off her computer. Thus, it is clear that an original printed message was unavailable, and the trial court properly allowed S.J. to testify as to the content of the messages that appeared on her computer screen. The trial court did not abuse its discretion in allowing S.J. to testify as to the messages she received on her computer.

---

[1] For the purposes of this analysis, we assume without deciding that the message is a writing.

In conclusion, appellant was sufficiently identified as the person who had made the statements through the Internet, the statements were party admissions, and the best available evidence of the existence of the statements was S.J.'s in-court testimony.

Jury Instruction

Appellant next contends that the jury instruction on flight was erroneously granted. The instruction read:

> The Court instructs the jury that if a person leaves the place where a crime was committed or flees to avoid detection, apprehension or arrest, this creates no presumption that the person is guilty of having committed the crime. However, it is a circumstance which you may consider along with the other evidence.

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)). "No instruction should be given that 'incorrectly states the applicable law or which would be confusing or misleading to the jury.'" Mouberry v. Commonwealth, 39 Va. App. 576, 582, 575 S.E.2d 567, 569 (2003) (quoting Bruce v. Commonwealth, 9 Va. App. 298, 300, 387 S.E.2d 279, 280 (1990)). "The evidence to support an instruction 'must be more than a scintilla.'" Frye v. Commonwealth, 231 Va. 370, 388, 345 S.E.2d 267, 280 (1986) (quoting LeVasseur v. Commonwealth, 225 Va. 564, 590, 304 S.E.2d 644, 658 (1983)). When determining whether sufficient evidence warranted a particular instruction, we view the evidence in the light most favorable to the party offering the instruction. Foster v. Commonwealth, 13 Va. App. 380, 383, 412 S.E.2d 198, 200 (1991).

It is well established that "[f]light following the commission of a crime is evidence of guilt, and the jury may be so instructed." Clagett v. Commonwealth, 252 Va. 79, 93, 472 S.E.2d 263, 271 (1996) (citing Boykins v. Commonwealth, 210 Va. 309, 313-14, 170 S.E.2d 771, 774

- 7 -

(1969). Flight is not limited to physically leaving a jurisdiction for an extended period, but includes the taking of any action, even of short duration, intended to disguise one's identity and distance oneself from the crime. Id. at 93-94, 472 S.E.2d at 271.

When viewed in the light most favorable to the Commonwealth, "more than a scintilla" of evidence supports its theory that appellant took action to distance himself from the scene. S.J. testified that she asked appellant to leave on several occasions, but he never did. On two occasions appellant attempted to prevent S.J. from calling the police. Only after S.J. was able to break free and enter her bedroom to call 911 did appellant leave, knowing that the police would be notified. Furthermore, when stopped by the police, appellant gave a false account of where he had been that evening. It is evident from the record that appellant took steps to distance himself from the crimes he had just committed. For these reasons, we find the trial court properly granted the Commonwealth's instruction on flight.

### CONCLUSION

For the foregoing reasons, we find the trial court did not err in admitting the content of appellant's instant message. We further find the court did not err in granting the Commonwealth's proposed jury instruction on flight. Accordingly, appellant's convictions are affirmed.

Affirmed.

Coleman, J., dissenting.

I believe the trial court's giving a jury instruction on flight was error on the facts of this case and that this error was not harmless.  For these reasons, I would reverse appellant's convictions for sexual battery and rape without considering his other assignment of error.  Thus, I respectfully dissent from the majority's affirmance of the convictions.

I.

A.  JURY INSTRUCTION ON FLIGHT

"A party is entitled to have the jury instructed according to the law favorable to his or her theory of the case if evidence in the record supports it."  Foster v. Commonwealth, 13 Va. App. 380, 383, 412 S.E.2d 198, 200 (1991).  In determining whether sufficient evidence supported the giving of a proffered instruction, we view the evidence in the light most favorable to the party requesting the instruction.  Id.  Whether the record contains the requisite "more-than-a-mere-scintilla" of evidence to support a proffered instruction "is a matter to be resolved on a case-by-case basis."  Brandau v. Commonwealth, 16 Va. App. 408, 412, 430 S.E.2d 563, 565 (1993).

Here, the Commonwealth's evidence, presented via the testimony of the complaining witness, S.J., was that she and appellant were long-time platonic friends who, in September 2002, engaged in consensual sexual intercourse.  Sometime after that consensual encounter but prior to October 6, 2002, S.J. told appellant she again wished to have only a platonic relationship with him.  On October 6, 2002, appellant came to her apartment uninvited.  S.J. told him to leave but he refused and followed her into her bedroom, where he raped and attempted to sodomize her.

S.J. managed to get away from appellant momentarily, grabbed a corded telephone, and said, "I'm going to call the cops.  I want you to stop now."  When he grabbed the phone from her

hand, she ran from the bedroom to the living room and grabbed a cordless phone. While holding the cordless phone, she said to appellant, "I want you to get out now. I am going to call the cops *if you don't leave*. *I just want you to* get dressed and *leave*. *That's all I want you to do*." (Emphasis added). Appellant, who was still in the bedroom, said, "Okay, I'm going. I'm going. I'm going to get dressed. I'm leaving. Don't call the cops. I'm leaving." While appellant dressed in her bedroom, S.J. returned to the bedroom "to make sure that he was getting dressed and leaving" as he had said he would. With the phone still in her hand, she then followed appellant as he left the bedroom and walked toward the front door. As appellant stopped near the front door to "fix[] his clothes," S.J. said, "'You don't need to fix your clothes. I just want you to go. Go like that. *Just leave out of my house before I call the cops*." (Emphasis added).

Appellant then took from her hands both the cordless phone and a cell phone she had also picked up. S.J. again ran to the bedroom, picked up the corded phone, and dialed 911. She could not see appellant from where she stood in her bedroom, but at some point "after [she] got that [911] call[] dialed," she "heard the front door shut" and "assum[ed]" appellant had left her apartment. S.J. completed the 911 call, and police stopped appellant's vehicle at a location about five miles from S.J.'s apartment.

When the Commonwealth proffered a flight instruction, appellant objected based on a lack of evidence "that he fled to avoid detection, apprehension or arrest." He argued the complaining witness' testimony was that "he's leaving because she's threatening, but she doesn't give any evidence that suggests that he knew she had actually called the police and they were on the way." The court then inquired of the prosecutor, "[W]here is the evidence of flight in this case? She asked him to leave and he leaves." The prosecutor responded as follows:

> Well, her testimony, Your Honor, was that she had gone to three different phones. At the point where she actually completes the 911 call he's still there and present.

> She testified she heard the door shut after she was already speaking to the 911 operator. I would submit it's a fair inference based on the evidence, if you believe the victim's testimony, that he in fact did know that a 911 call had been made and did proceed to leave the scene.

The trial court ruled "there's at least . . . some representation" and granted the proffered flight instruction.

Virginia's appellate courts liberally grant flight instructions on the premise that an individual's "[f]light following the commission of a crime is evidence of guilt . . . ." Clagett v. Commonwealth, 252 Va. 79, 93, 472 S.E.2d 263, 271 (1996). "Analytically, flight is an admission by conduct." United States v. Myers, 550 F.2d 1036, 1049 (5th Cir. 1977). Evidence of flight may include flight from the scene or flight from the jurisdiction, Schlimme v. Commonwealth, 16 Va. App. 15, 18, 427 S.E.2d 431, 433 (1993), and one's presence at the scene or in the jurisdiction, like any other element of a crime, may be proved by circumstantial evidence, see id. at 18, 427 S.E.2d at 433-34. "Evidence of flight from authorities that occurred days, or even months, after a crime is admissible, as 'any flight at a time when it may be to avoid arrest, prosecution, or confinement tends to show a consciousness of guilt.'" Ricks v. Commonwealth, 39 Va. App. 330, 335, 573 S.E.2d 266, 268 (2002) (quoting Langhorne v. Commonwealth, 13 Va. App. 97, 103, 409 S.E.2d 476, 480 (1991)). Factors such as "[t]he remoteness in time of the flight" generally "go[] to the weight of the evidence and not to its admissibility." Langhorne, 13 Va. App. at 103, 409 S.E.2d at 480.

"'A court will generally scrutinize the facts of each case to determine whether the jury should be given the opportunity to draw [an] inference of guilt from the defendant's flight.'" Id. at 102-03, 409 S.E.2d at 480 (quoting United States v. Martinez, 681 F.2d 1248, 1257 (10th Cir. 1982)). We have recognized that, "in order to show a 'consciousness of guilt,' a [sufficient] nexus must exist between the flight and the alleged offense." Ricks, 39 Va. App. at 335, 573

S.E.2d at 268.  Finally, we have held that this nexus may exist even if "[a defendant's] flight might have been attributable to several causes."  Id. at 337, 573 S.E.2d at 269.  As long as "any one of those causes was the . . . offense [for which the defendant was then being tried]," we have held "'consciousness of guilt' [may] be inferred by the [finder of fact]," thereby justifying the giving of a flight instruction.  Id. (in which defendant maintained that the existence of "'outstanding warrants' and the marijuana found on him were plausible reasons for his flight that were unrelated to the murder"); see also Leonard v. Commonwealth, 39 Va. App. 134, 571 S.E.2d 306 (2002) (involving defendant's escape from custody while being held for multiple unrelated charges); Langhorne, 13 Va. App. at 100, 103, 409 S.E.2d at 478, 480 (involving defendant's arrest for heroin possession and conspiracy while multiple other charges were pending against him and he was on Richmond's "top ten most wanted list").

Nevertheless, our Supreme Court has recognized that not all departures from the scene of a crime or the jurisdiction justify the giving of a jury instruction on flight.  For example, in Jarrell v. Commonwealth, 132 Va. 551, 110 S.E. 430 (1922), the Supreme Court held the trial court properly refused a flight instruction because "[t]he Commonwealth introduced no evidence tending to show that the accused fled to avoid arrest";  instead, all evidence indicated he left the county to join the army pursuant to plans made prior to the homicide for which he was on trial.  Id. at 569, 110 S.E. at 436, cited with approval in Ricks, 39 Va. App. at 335, 573 S.E.2d at 268.  Whether the departure constitutes flight showing a consciousness of guilt, thereby justifying the giving of a jury instruction, "should be cautiously considered" because the departure "may be attributable to a number of other reasons, than consciousness of guilt."  Anderson v. Commonwealth, 100 Va. 860, 863, 42 S.E. 865, 865 (1902), quoted with approval in Carson v. Commonwealth, 188 Va. 398, 409, 49 S.E.2d 704, 409 (1948) (holding flight instruction, when

given, must state that flight is merely evidence relevant to determination of guilt and not presumptive evidence of guilt).

The Supreme Court of Arizona has applied similar principles to reverse the giving of a flight instruction in a case involving departure from the crime scene. State v. Smith, 552 P.2d 1192 (Ariz. 1976). In Smith, the defendant and his accomplice robbed, beat, and bound the victim in her office; threatened to kill her if she told police; and then walked from the office to the parking lot and drove away. Id. at 1193. The court held the perpetrators' departure did not meet the threshold requirement for an instruction on flight. Id. at 1194.

Applying the holding in Smith in a later case, the Arizona Court of Appeals has emphasized that, although "[i]t is not necessary to show that law enforcement officers were pursuing the defendant at the time in order to satisfy the 'consciousness of guilt' requirement," "merely leaving the [crime scene or jurisdiction] is not tantamount to flight." State v. Wilson, 914 P.2d 1346, 1349 (Ariz. Ct. App. 1996). Some additional factor or circumstance, beyond mere departure from the scene, must be present. See Bowie v. Commonwealth, 184 Va. 381, 391-92, 35 S.E.2d 345, 349-50 (1945) (upholding giving of flight instruction where body of passenger, with whom driver was angry, left car and fell "to the surface of the highway" while "the car was swerved to the left and its speed increased, all of which naturally accelerated the departure of [the] passenger and added to the violence with which her body came in contact with the hard-surfaced pavement"; driver continued to proceed forward for a distance despite honking of passing car and admission to seeing body in rearview mirror; and when driver finally stopped, driver argued with bystander about whether driver should provide aid and "showed no interest, sorrow, grief nor anxiety for the [injured girl]"); Ricks, 39 Va. App. at 337, 573 S.E.2d at 269 (upholding giving of flight instruction where defendant "admitted he was at the scene [of the fatal shooting] and claimed he accidentally shot the victim while arguing over the gun");

- 13 -

Schlimme, 16 Va. App. at 18, 427 S.E.2d at 433-34 (upholding giving of flight instruction where murder victim was shot by unidentified person in red car, who "fled the scene within minutes after the fatal shot was fired," and where evidence established witness who saw defendant "frequently" during the year prior to the murder did not see him for at least two months after the shooting, during which time the defendant "phoned [the witness] several times after leaving town and admitted during one of those conversations that he had been involved in a shooting").

Thus, before a trial court may give a flight instruction, it must make a threshold determination that the defendant's behavior constituted flight showing a consciousness of guilt. E.g., Jarrell, 132 Va. at 569, 110 S.E. at 436. In language adopted by the Fifth Circuit Court of Appeals and various other federal and state courts,[2] the probative value of supposed flight evidence "as circumstantial evidence of guilt depends on the degree of confidence with which four inferences can be drawn," including an inference (1) "from the defendant's behavior to flight" and (2) "from flight to consciousness of guilt." Myers, 550 F.2d at 1049 (listing the remaining inferences as "(3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged"); see United States v. Beahm, 664 F.2d 414, 419-20 (4th Cir. 1981) (citing Myers for proposition that "[i]f the government wishes to offer evidence of flight to demonstrate guilt, it must ensure that each link in the chain of inferences leading to that conclusion is sturdily supported"). "Stated another way, this test requires that the court 'be able to reasonably infer from the evidence that the defendant left the scene in a manner which obviously invites suspicion or announces guilt.'" State v. Speers, 98 P.3d 560, 567 (Ariz. Ct. App. 2004) (quoting State v. Weible, 688 P.2d 1005, 1008 (Ariz. 1984)).

---

[2] We noted in Ricks that "[w]e ma[d]e no ruling on the applicability of the Fifth Circuit's four-prong test to Virginia cases involving evidence of flight." 39 Va. App. at 337 n.4, 573 S.E.2d at 269 n.4.

Here, the evidence, viewed in the light most favorable to the Commonwealth's theory of the case, does not support a finding that the first two Myers inferences were satisfied--that appellant "'left the scene in a manner which obviously invites suspicion or announces guilt.'" Speers, 98 P.3d at 567 (quoting Weible, 688 P.2d at 1008). Instead, the evidence, viewed in the light most favorable to the Commonwealth, establishes at most that the complaining witness repeatedly told appellant to leave her residence and that he eventually complied with her request. Although the Commonwealth argued the complaining witness "was already speaking to the 911 operator" when appellant left the apartment, the record does not support such a finding. Rather, the complaining witness testified merely that she "heard the [front] door shut" "[a]t some point after [she] got that [911] call[] *dialed*." (Emphasis added). Further, at that time, she was at a location in her bedroom from which she could not see appellant and he could not see her.

The fact that the complaining witness admitted telling appellant she wanted him to leave and that she would call the police if he failed to leave as she had requested, coupled with an absence of evidence to prove he was still present when she reached the 911 dispatcher, deprives the evidence of appellant's departure of any probative value as related to his guilt of the underlying crime. Although appellant's departure supported the inference that he left to avoid being accused of rape to the police, his departure was not probative of whether such an accusation would have been true or false--i.e., whether he committed the underlying offense. Instead, because appellant departed S.J.'s residence at her direction, his departure *equally* supported an inference that he left to avoid having the complaining witness *falsely* accuse him of rape. Cf. Woolridge v. Commonwealth, 29 Va. App. 339, 349, 512 S.E.2d 153, 158 (1999) ("[A]n accused's willingness to do something he or she is required by law to do is not probative of his or her guilt or innocence . . . ."). Thus, the evidence in this case, viewed in the light most favorable to the Commonwealth, failed to support the giving of a flight instruction.

These facts are clearly distinguishable from the situation we addressed in <u>Ricks</u>.  There,

the defendant's behavior supported the first two <u>Myers</u> inferences--an inference of (1) flight

(2) showing a consciousness of guilt--and the defendant disputed the third inference, contending

the jury should not have been permitted to infer he exhibited a consciousness of guilt *for the*

*crime charged* because he was also wanted for another offense.  <u>See</u> <u>Ricks</u>, 39 Va. App. at

336-37, 573 S.E.2d at 269 (upholding giving of flight instruction where defendant claimed flight

could also "have been motivated by . . . outstanding warrants [for unrelated offenses] or his

possession of marijuana").  In appellant's case, unlike <u>Ricks</u>, the evidence failed to support an

inference of (1) flight (2) showing a consciousness of guilt.  Thus, the jury was improperly

instructed that it could consider appellant's leaving the complaining witness' apartment as a

circumstance indicative of his guilt for the charged sexual offenses.

## B.  HARMLESS ERROR

"Harmless error analysis is appropriate in the context of improper jury instructions."  <u>Kil</u>

<u>v. Commonwealth</u>, 12 Va. App. 802, 812, 407 S.E.2d 674, 679-80 (1991).  In Virginia,

non-constitutional error is harmless "[w]hen it plainly appears from the record and the evidence

given at the trial that the parties have had a fair trial on the merits and substantial justice has been

reached."  Code § 8.01-678.

> "If, when all is said and done, [it is clear] that the error did not
> influence the [fact finder], or had but slight effect, . . . the
> judgment should stand . . . .  But if one cannot say, with fair
> assurance, after pondering all that happened without stripping the
> erroneous action from the whole, that the judgment was not
> substantially swayed by the error, it is impossible to conclude that
> substantial rights were not affected. . . .  If so, or if one is left in
> grave doubt, the [judgment] cannot stand."

<u>Clay v. Commonwealth</u>, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001) (quoting <u>Kotteakos v.</u>

<u>United States</u>, 328 U.S. 750, 764-65 (1946)); <u>see also</u> <u>Lavinder v. Commonwealth</u>, 12 Va. App.

1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc) (discussing harmless error analysis prior to

- 16 -

Supreme Court's adoption of <u>Kotteakos</u> test in <u>Clay</u>). In determining whether an error is harmless, we review "the record and the evidence and evaluate the effect the error may have had on how the finder of fact resolved the contested issues." <u>Lavinder</u>, 12 Va. App. at 1007, 407 S.E.2d at 912. Non-constitutional error is harmless if evidence of guilt is so "overwhelming" and the error so insignificant by comparison that we can conclude the error "failed to have any 'substantial influence' on the verdict." <u>United States v. Lane</u>, 474 U.S. 438, 450 (1986) (quoting <u>Kotteakos</u>, 328 U.S. at 765) (involving erroneous admission of evidence).

Here, we cannot conclude, without usurping the jury's fact-finding function, "'that the error did not influence the [fact finder], or had but slight effect.'" <u>Clay</u>, 262 Va. at 260, 546 S.E.2d at 731 (quoting <u>Kotteakos</u>, 328 U.S. at 764). "The [faulty flight] instruction may [have] affect[ed] the verdict because it invite[d] the jury to find a consciousness of guilt on [appellant's] part based on very weak evidence." <u>Speers</u>, 98 P.3d at 570. Given that appellant's defense was consent and that the sufficiency of the evidence to support appellant's convictions rested solely on the jury's perception of the credibility of the complaining witness' testimony as compared to appellant's, the trial court's express authorization to the jury that it could consider appellant's leaving the scene of the alleged crime as evidence of guilt could have influenced the jury's decision to believe her testimony over his. Thus, I do not believe we can conclude the erroneous instruction was harmless.

II.

For these reasons, I would reverse appellant's convictions for sexual battery and rape without considering his other assignment of error. Thus, I respectfully dissent from the majority's affirmance of the convictions.

- 17 -