ALBERT C. SCHLIMME IV

v.

COMMONWEALTH OF VIRGINIA

No. 1100-91-2

Decided March 2, 1993

COUNSEL

Louis A. Rosenstock, III, for appellant.

Michael T. Judge, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**ELDER, J.**—Albert C. Schlimme, IV (appellant), appeals from convictions for second degree murder and use of a firearm in the commission of a murder. He challenges the giving of a jury instruction on flight. He also contests the sufficiency of the evidence based on the theory that the circumstantial evidence was insufficient to support a finding of guilt beyond a reasonable doubt and failed to exclude every reasonable hypothesis of innocence. For the reasons set forth below, we affirm appellant's convictions.

The murder victim, Brian Hinchey, was shot in the chest around 1:00 a.m. on April 8, 1990, by an unidentified person in a red car. No bullet was found in Hinchey's body, but police recovered a small lighter resembling a gun beneath the body and a shell casing and bullet[1] about ten feet away. Ballistics evidence showed that the bullet and casing had been fired from a 9mm pistol found under the seat of appellant's car on September 19, 1990. This gun was also identified as one stolen from the car of a third party, Julian Skipper, in the early

---

[1] Although the casing was found on the night of the murder, the bullet was not discovered until two months later through the use of a metal detector.

morning hours of April 7, 1990, approximately twenty-four hours before Hinchey's shooting. In addition to the gun, Skipper had reported ammunition and a baseball cap missing. In conducting their search of September 19, the police recovered these items from inside a house in Maryland where appellant was staying with his grandmother.

Between 9:00 and 11:00 a.m., also on April 7, 1990, appellant arrived at the house of a friend, Warren Younce, with a 9mm pistol in his possession, which appellant and Younce fired. Younce testified that he had never seen the pistol before and did not know how appellant had obtained it. Later that evening, Younce's younger sister, Sherri, a man named Kendall Bess, and appellant left the Younce house in a 1988 burgundy-red Dodge Daytona owned by Warren and Sherri's mother. Sherri Younce remembers very little about that evening because she had been drinking and taking drugs. She did testify, however, that she was at home by 1:00 a.m. and that her mother's car was in the driveway when she woke up the next morning. Before trial, Bess was killed in an auto accident.

Warren Younce last saw appellant, Sherri and Bess in his mother's car at 7:00 p.m. that same evening, and did not see appellant again for at least two months because appellant was out of town. Appellant phoned Younce two or three times during that period, and at one point appellant told Younce that he had been involved in a shooting.

At trial, after the Commonwealth rested, counsel for appellant moved to strike, and the motion was denied. Appellant elected not to put on any evidence, and renewed his motion, which was again denied.

## I.

Appellant asserts first that the court erred in giving the jury an instruction on flight. Although appellant objected to the giving of the instruction at the close of trial, he did not object during trial to admission of the evidence relating to flight. Based on Rule 5A:18, he may not raise such an objection for the first time on appeal. Accordingly, our only concern is with the propriety of the instruction itself. Our review of this issue is governed by the principle that a proffered instruction should be given "[i]f [it] finds any support in credible evidence." *McClung v. Commonwealth*, 215 Va. 654, 657, 212 S.E.2d 290, 293 (1975).

■ A determination of the propriety of the flight instruction requires an analysis of the two different types of flight implicated in this case: flight from the scene of the crime and flight from the area or jurisdiction. Although appellant's assignment of error is premised on flight from town and not from the crime scene itself, the instruction was neutral on its face and could have applied to either type. Generally speaking, evidence of either type of flight is admissible when "[the flight] may be to avoid arrest, prosecution, or confinement[,] [because it] tends to show a consciousness of guilt." *Langhorne v. Commonwealth*, 13 Va. App. 97, 103, 409 S.E.2d 476, 480 (1991).

## A.

■ In regard to flight from the scene, this is an unusual case in that the record contains no eyewitness testimony directly linking appellant to the scene of the crime. All the evidence presented by the Commonwealth was circumstantial. Although appellant argues otherwise and there appear to be no cases on point, this fact is not fatal to the Commonwealth's case. "[A]ny . . . criminal charge . . . [may] be proved by circumstantial evidence . . . '[w]here all the circumstances of time, place, motive, means, opportunity and conduct concur in pointing out the accused as the perpetrator of the crime.' " *Potts v. Commonwealth*, 12 Va. App. 1093, 1097, 408 S.E.2d 256, 258 (1991) (quoting *Lyons v. City of Petersburg*, 221 Va. 10, 13, 266 S.E.2d 880, 881 (1980) (per curiam)) (other citation omitted). Logically, then, circumstantial evidence may also be used to place appellant at the scene of the crime, thereby justifying the giving of an instruction on flight.

The evidence shows that the murderer, who was travelling in a red car, fled the scene within minutes after the fatal shot was fired. Appellant and Kendall Bess were also travelling in a red car that night. On the morning before the murder, appellant was seen with a 9mm pistol in his possession. The evidence shows that a bullet and casing found at the scene were fired from a 9mm pistol which had been stolen from a third party approximately twenty-four hours before the murder. That same pistol was found under the seat of appellant's car several months later. Other items stolen along with the pistol were found inside a house in Maryland where appellant was staying with his grandmother. Clearly, the Commonwealth presented credible circumstantial evidence linking appellant to the scene of the crime, thereby justifying the giving of an instruction on flight.

## B.

The instruction was also proper as applied to the second type of flight—flight from the jurisdiction. The evidence showing appellant's flight to Maryland was even stronger than that relating to flight from the scene. Although the Commonwealth was unable to show precisely when appellant left the area, it did show that one witness, Warren Younce, did not see appellant for at least two months after the shooting. Younce testified that he had known appellant for about a year and that they saw each other "frequently" prior to the murder. The evidence also showed that appellant phoned Younce several times after leaving town and admitted during one of those conversations that he had been involved in a shooting. Given that "any credible evidence" will support the giving of a proffered jury instruction, we conclude that the instruction was appropriate as it related to flight from the jurisdiction.

■ Appellant argues that the instruction was improper because the evidence did not show precisely when he left the jurisdiction, but only that he was out of town two months after the murder. Typically, however, "[t]he remoteness in time of the flight goes to the weight of the evidence and not to its admissibility." *Langhorne v. Commonwealth*, 13 Va. App. at 103, 409 S.E.2d at 480 (citations omitted). The more remote in time the flight, the greater the chance that it was caused by something other than guilt of the crime. *Id.* The immediacy of the flight may "go to admissibility . . . where 'the defendant does not know, or his knowledge is doubtful, about the charges and the accusations made against him.' " *Id.* (quoting *United States v. Hernandez-Miranda*, 601 F.2d 1104, 1106 (9th Cir. 1979)). However, "the importance of the immediacy of the flight is diminished if there is . . . other evidence to indicate that the defendant knew he was sought for the crime." *Id.* (quoting *United States v. Martinez*, 681 F.2d 1248, 1258 (10th Cir. 1982)).

Appellant argues, under the principles stated above, that the instruction should not have been given because the Commonwealth did not show that he had any knowledge of the charges against him at the time he fled. This argument fails for several reasons. First, appellant admitted to Warren Younce that he had been involved in a shooting. Second, the nature of the crime in this case is such that the murderer would have known that the crime would be discovered soon after its commission. This is in marked contrast to the case cited above, which involved drug transactions which might never have been discovered

by the authorities. *See, e.g., Langhorne*, 13 Va. App. at 103, 409 S.E.2d at 480. In this case, however, the murderer almost certainly knew that the crime would become known to the police as a result of the gunshots and the presence of the victim's body by the side of the road. For that reason, proving that appellant had knowledge of pending charges is less important in this case. Third, the above principles concerning knowledge of pending charges and the immediacy of the flight apply to the admissibility of evidence, not to the giving of a flight instruction based on evidence already admitted. As stated earlier, appellant did not object to the admission of that evidence at trial and may not raise such an objection for the first time on appeal.

Based on the evidence introduced at trial, we hold that the court did not err in giving the instruction on flight.

## II.

■ Appellant also challenges the sufficiency of the evidence.

When considering the sufficiency of the evidence on appeal of a criminal conviction, we must view all the evidence in the light most favorable to the Commonwealth and accord to the evidence all reasonable inferences fairly deducible therefrom. The jury's verdict will not be disturbed on appeal unless it is plainly wrong or without evidence to support it.

*Traverso v. Commonwealth*, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988) (citations omitted). It is true that, in a case based upon circumstantial evidence, the Commonwealth must exclude every reasonable hypothesis of innocence. *Cantrell v. Commonwealth*, 7 Va. App. 269, 289, 373 S.E.2d 328, 338 (1988). "However, '[w]hether the Commonwealth relies upon either direct or circumstantial evidence, it is not required to disprove every remote possibility of innocence, but is, instead, required only to establish guilt of the accused to the exclusion of a reasonable doubt.'" *Id.* (quoting *Bridgeman v. Commonwealth*, 3 Va. App. 523, 526-27, 351 S.E.2d 598, 600 (1986)).

In this case, the circumstantial evidence is sufficient to exclude all *reasonable* hypotheses of innocence. Although no one actually saw appellant at the scene of the crime, the circumstantial evidence, viewed in the light most favorable to the Commonwealth, was sufficient to justify the jury's conclusion that appellant was present at the scene. The evidence established that the murderer, who was travelling

in a red car, fled the scene within minutes after the shots were fired. Appellant and Kendall Bess were also travelling in a red car that night. On the morning before the murder, appellant was seen with a 9mm pistol in his possession. The bullet and casing found at the scene were fired from a 9mm pistol which had been stolen from a third party approximately twenty-four hours before the murder, and that same pistol was found under the seat of appellant's car several months later.

Appellant's mere presence at the scene does not necessarily exclude all reasonable hypotheses of innocence, for the evidence established that Kendall Bess may also have been present. When coupled with evidence concerning appellant's flight from the jurisdiction, however, the Commonwealth's proof is sufficient. Although the Commonwealth was unable to show precisely when appellant left the area, it did show that one witness, Warren Younce, did not see appellant again for at least two months after the shooting. Younce testified that he had known appellant for about a year and that they saw each other "frequently" prior to the murder. He also testified that he had seen appellant twice on the day before the murder. He had joined appellant in test-firing the 9mm pistol on the morning before the murder, and he saw appellant, who was out with Younce's sister and Kendall Bess in Younce's mother's car, on the evening of the murder. The evidence also showed that appellant phoned Younce several times after leaving town and admitted during one of those conversations that he had been involved in a shooting.

Viewing the evidence of appellant's flight from both the scene and the jurisdiction in conjunction with the Commonwealth's other evidence, including appellant's possession of the 9mm pistol and other stolen items at the time of his arrest, we find the evidence sufficient to support the jury's finding of guilt. For the reasons outlined above, we cannot say that the verdict was plainly wrong or without evidence to support it. Accordingly, the judgment of the trial court is affirmed.

*Affirmed.*

Willis, J., concurred.

Benton, J., dissenting.

## I.

The evidence in this case does not prove beyond a reasonable doubt that Albert C. Schlimme IV killed the victim. None of the evidence

places Schlimme at the scene of the shooting. Moreover, even if the jury could be allowed to speculate that Schlimme was at the scene of the shooting, the evidence does not disprove the hypothesis that Kendall Bess, Sherri Younce, or some other person shot the victim.

> It is not sufficient to create a suspicion or probability of guilt, but the evidence must establish guilt of the accused beyond a reasonable doubt. It must exclude every reasonable hypothesis except that of guilt. The guilt of the party is not to be inferred because the facts are consistent with his guilt, but they must be inconsistent with his innocence.

*Allen v. Commonwealth*, 211 Va. 805, 808, 180 S.E.2d 513, 515 (1971).

Distilled to the relevant facts, the evidence proved that the victim was shot in the Matoaca area of Chesterfield County prior to 1 a.m. on April 8, 1990, by someone whom the victim did not identify. Before his death, the victim indicated that he did not know the person who shot him. The victim died from a single gunshot wound.

The police found "a Japanese-made cigarette lighter, which resembled a pistol, located underneath the victim, [and] also recovered a nine millimeter shell casing and Luger that was found in the road about ten feet northwest of the victim." The evidence does not prove whether the Luger had been discharged. Indeed, except for proof that the Luger was found near the victim, no other evidence was offered concerning that Luger. Two months later, a police officer went to Ruffin Mill Road, the street where the victim was shot, and, using a metal detector, recovered a bullet from "1300 Ruffin Mill Road." According to the testimony, the bullet had been fired by the same weapon that ejected the shell casing that the police found on April 8. The evidence does not prove whether the bullet was the bullet that killed the victim. The evidence also does not prove whether the victim was killed by a bullet shot from the Luger that was recovered from the road or by a bullet shot from some other weapon.

The evidence further proved that at 7 p.m. on April 7, 1990, Schlimme was with Sherri Younce and Kendall Bess at a house "in the west end." All three left together in an automobile driven by Kendall Bess. The automobile was "maroon" or "burgundy red" in color. Sherri Younce testified that she could not recall anything about that day because she had been drinking heavily and taking drugs all

day. The record contained no testimony from Kendall Bess; he was killed in an automobile accident at some unspecified time after April 7. No evidence proved that Bess drove to Chesterfield County, that Schlimme was at or near the place where the victim was shot, or that Schlimme was in an automobile at 1 a.m. on April 8.

Five months after the shooting incident, the police arrested Schlimme in Maryland. He had in his automobile a nine-millimeter Llama pistol. According to the testimony, laboratory tests proved that the shell casing found on April 8 and the bullet found two months later were fired by the Llama pistol that was seized from Schlimme's automobile. No evidence, however, proved that a bullet shot from this Llama pistol killed the victim.

The majority bridges the gaps in the chain of proof by the process of speculation. Moreover, the gaps are significant. First, no evidence placed Schlimme at the place where the victim was shot. The testimony in the record proved that Schlimme was seen in the "west end" at 7 p.m., six hours before the shooting. No testimony accounts for Schlimme's presence at 1:00 a.m. or during the six hour period prior to 1:00 a.m.

Second, no evidence proved that Schlimme had the Llama pistol prior to or at the time of the April shooting incident. The evidence proved that the Llama pistol was stolen on the morning of April 7. No evidence proved that Schlimme was the thief. The evidence proved that Warren Younce saw Schlimme with a nine-millimeter weapon on the morning of April 7; however, Younce could not distinguish the weapon that Schlimme had from any other nine-millimeter weapon.[2] The evidence also does not eliminate the possibility that Bess, Sherri Younce, or some other person stole the Llama pistol on April 7. That Schlimme had the Llama pistol in September is not a basis upon which to infer that he had it on April 7.

Third, the evidence proved that on April 7 Schlimme was last seen at 7:00 p.m. in the "west end." The victim was shot in Matoaca, in

---

[2] Indeed, during Warren Younce's direct testimony the Commonwealth sought to introduce into evidence the Llama pistol as the weapon Younce saw. Schlimme's counsel objected to the admission of the pistol on the basis of a lack of identification. When Younce testified on cross-examination that he could not distinguish the pistol from any other similar pistol, the Commonwealth did not again offer the pistol as an exhibit using Younce as the testimonial sponsor. The Commonwealth did not offer the pistol as an exhibit until the owner of the stolen pistol testified. When the owner identified the Llama pistol, it was then admitted into evidence.

southern Chesterfield County. The victim did not know who shot him. He did not indicate whether the assailant was male or female. The only relevant statements attributed to the victim were as follows:

I asked him if he knew who did it to him, who shot him.

He said, "No."

I asked him what kind of car they were driving.

He mumbled something I didn't understand.

I asked him what color it was.

He said it was red. And he said he couldn't feel his legs and that his bladder hurt.

We asked him if he could open his eyes.

He said, "No." He just said he was going to die.

Even if the majority is correct that "red" was the color of the vehicle the victim saw in the Matoaca section of Chesterfield County and that the assailant was associated with a red vehicle, no evidence proved that the vehicle was the "maroon" or "burgundy red" automobile Bess was driving six hours earlier, or that Schlimme was in the vehicle, or that Schlimme fired a weapon.

Fourth, the evidence proved that several months after the incident, Warren Younce was talking on the telephone to Schlimme when Schlimme "said that he was involved in a shooting." Schlimme did not say where it occurred, who it involved, or when it occurred. No evidence relates the shooting Schlimme spoke of to the incident in which the victim was shot on the morning of April 8.

Last and most significant, the evidence failed to prove that a bullet from the Llama pistol that was recovered from Schlimme's possession five months after the shooting incident killed the victim. Although the majority opinion refers to the Llama pistol as "the actual murder weapon," the evidence does not prove that to be the case.

Despite these gaps in the chain of circumstantial evidence, the majority upholds the conviction. I believe the majority's analysis eliminates this court's obligation to determine whether the Commonwealth has proved guilt beyond a reasonable doubt, the obligation imposed by

the due process clause of the Constitution. *See Jackson v. Virginia*, 443 U.S. 307, 318 (1979).

"Where the sufficiency of the evidence is challenged after conviction, it is [the duty of the appellate court] to consider [the evidence] in the light most favorable to the Commonwealth and give [the evidence] all reasonable inferences fairly deducible therefrom." *Higginbotham v. Commonwealth,* 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). When we view the evidence in the light most favorable to the Commonwealth, we defer as we must to the function of the finder of fact to resolve *conflicts* in the evidence. Once the evidence is viewed in the proper light, the question whether that evidence excludes every reasonable hypothesis of innocence is a question of law for the appellate court.

It has been repeatedly held that it is not sufficient that the evidence creates a suspicion or probability of guilt; but it must go further and exclude every reasonable hypothesis except that of guilt. Nor, where a fact is equally susceptible of two interpretations, one of which is consistent with the interpretation of the accused, may the jury arbitrarily adopt that interpretation which incriminates him. The failure of the Commonwealth to point out, or the defendant to name the guilty party, is not allowed to prejudice the presumption of innocence in favor of the defendant.

*Smith v. Commonwealth*, 185 Va. 800, 820, 40 S.E.2d 273, 282 (1946).

A long standing principle of appellate review is that " 'where the evidence leaves it indefinite which of several hypotheses is true, or establishes only some finite probability in favor of one hypothesis, such evidence cannot amount to proof [beyond a reasonable doubt], however great the probability may be.' " *Vaughan v. Commonwealth*, 7 Va. App. 665, 675, 376 S.E.2d 801, 807 (1989) (quoting *Massie v. Commonwealth*, 140 Va. 557, 565, 125 S.E. 146, 148 (1924)). A reasonable doubt is one " 'based on reason which arises from the evidence or lack of evidence.' " *Johnson v. Louisiana*, 406 U.S. 356, 360 (1972) (quoting *United States v. Johnson*, 343 F.2d 5, 6 n.1 (2d Cir. 1965). Thus, this Court has recently stated that "[w]here an inference supporting guilt is no more likely to arise from a proven fact than one favoring innocence, the inference of guilt is impermissible." *Morton v. Commonwealth*, 13 Va. App. 6, 11, 408 S.E.2d 583, 586 (1991).

Circumstantial evidence can never warrant a finding beyond a reasonable doubt of criminal culpability when "[t]oo many essentials in the chain of circumstances are lacking." *Whitlow v. Commonwealth*, 198 Va. 165, 168, 93 S.E.2d 127, 129 (1956).

> We are guided by familiar principles. Where the evidence is entirely circumstantial, all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and must exclude every reasonable hypothesis of innocence. The chain of necessary circumstances must be unbroken. The circumstances of motive, time, place, means, and conduct must all concur to form an unbroken chain which links the defendant to the crime beyond a reasonable doubt.

*Bishop v. Commonwealth*, 227 Va. 164, 169, 313 S.E.2d 390, 393 (1984). Viewed in the light most favorable to the Commonwealth, the evidence leaves equally probable the hypotheses that: (1) Schlimme was not at the scene of the shooting; (2) Bess, Sherri Younce, or some other person stole the Llama weapon on April 7; (3) even assuming arguendo that the victim saw a "maroon" or "burgundy red" automobile in the Matoaca section of Chesterfield County, Schlimme neither was in the vehicle nor fired a weapon; (4) Schlimme was not referring to the April 8 shooting when he told Younce he was involved in a shooting; and (5) the victim was killed by a bullet from a weapon other than the Llama weapon recovered from Schlimme's possession. These hypotheses of innocence arise from the evidence, are rational when considered with all of the evidence in the case, and are consistent with all of the evidence in the case. *See Williams v. Commonwealth*, 130 Va. 778, 783, 107 S.E. 655, 656 (1921).

Moreover, the record does not contain evidence tending to exclude these hypotheses of innocence. *Id.* at 782-83, 107 S.E. at 656. The guilt of a defendant can only be inferred when the facts are inconsistent with his innocence. *Allen*, 211 Va. at 808, 180 S.E.2d at 515. This is simply not the case here. Indeed, because the majority concedes that "the evidence shows that Kendall Bess may also have been present" when the victim was shot, the majority's own reasoning does not exclude Bess as the killer. The majority affirms the conviction, nonetheless, based solely upon a suspicion. "But a suspicion of guilt, however strong, or even a probability of guilt, is insufficient to support a criminal conviction." *Bishop*, 227 Va. at 170, 313 S.E.2d at 393. To uphold a conviction upon the supposition that when the jury found Schlimme

guilty, it must have considered the gaps in the evidence and found them non-existent is simply to discard logic.

## II.

I would also hold that the trial judge erred in granting an instruction concerning flight. " 'It is error to give an instruction, though correct as an abstract statement of law, unless there is sufficient evidence in the record to support it.' " *Pannell v. Commonwealth*, 9 Va. App. 170, 172, 384 S.E.2d 344, 345 (1989) (quoting *Swift v. Commonwealth*, 199 Va. 420, 424, 100 S.E.2d 9, 13 (1957)). The instruction stated:

> If a person leaves the place where the crime was committed, this creates no presumption that the person is guilty of having committed the crime. However, that is a circumstance which you may consider along with the evidence.

No evidence placed Schlimme at "the place where the crime was committed." Absent such proof, the instruction impermissibly suggested to the jury that Schlimme was at the place where the victim was shot. Based on that speculative suggestion, the instruction allowed the jury to infer guilt from presumed flight because Schlimme was arrested in Maryland five months after the offense. Likewise, the instruction impermissibly permitted the jury to infer Schlimme's presence at the place where the victim was shot if it found that Schlimme's presence in Maryland was flight. Both inferences arise from impermissible use of the instruction in a case where it is unknown whether the accused was present at the scene of a criminal offense. Evidence of flight is relevant only "because it may demonstrate consciousness of guilt[; it] has no other probative value." *People v. Pitts*, 273 Cal. Rptr. 757, 911, 223 Cal. App. 3d 606, 877 (1990). Evidence of flight cannot be used to prove identity.[3]

---

[3] The use of the flight instruction also has often been barred because it is a comment on the character of the evidence. *See Fenelon v. State*, 594 So. 2d 292, 295 (Fla. 1992); *State v. Cathey*, 741 P.2d 738, 748-49 (Kan. 1987); *State v. Grant*, 275 S.C. 404, 272 S.E.2d 169, 171 (1980); *State v. Felty*, 35 Or. App. 735, 582 P.2d 478 (1978). Although Virginia has no case law that specifically bars the use of a flight instruction, our case law is emphatic that "[w]hen a trial judge instructs the jury in the law, he or she may not 'single out a part of the evidence tending to establish a particular fact.' The danger of such emphasis is that it gives undue prominence by the trial judge to the highlighted evidence and may mislead the jury." *Terry v. Commonwealth*, 5 Va. App. 167, 170, 360 S.E.2d 880, 882 (1987) (quoting *Woods v. Commonwealth*, 171 Va. 543, 548, 199 S.E. 465, 467 (1938)). The instruction at issue in this case comments on the evidence because it posits the unproved issue — that Schlimme left the place where the crime occurred.

Without evidence that Schlimme was at the scene of the shooting, there can be no rational or reasonable inference that he fled the scene. Through a series of disjointed inferences, the majority speculates that Schlimme was at the place where the victim was shot and then infers that, because Schlimme was not there when the victim was discovered and was not seen by one of Schlimme's friends for several months, Schlimme must have fled.

> For departure to take on the legal significance of flight, there must be other circumstances present and unexplained which, together with the departure, reasonably justify an inference that it was done with a consciousness of guilt and in an effort to avoid apprehension or prosecution based on that guilt.

*State v. Wrenn*, 584 P.2d 1231, 1234 (Idaho 1978).

If the evidence is insufficient "to support a chain of unbroken inferences from the defendant's behavior to the defendant's guilt of the crime charged," a flight instruction is invalid and inappropriate. *United States v. Silverman*, 861 F.2d 571, 581 (9th Cir. 1988).

> Analytically, flight is an admission by conduct. Its probative value as circumstantial evidence of guilt depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.

*United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir. 1977) (citation omitted).

The evidence does not support the first inference that Schlimme fled. The evidence does not prove when Schlimme moved to Maryland. Warren Younce testified that he saw his sister, Sherri, at their mother's house on April 8. He could not recall whether he saw Schlimme at that time. He testified that he next saw Schlimme "two or three months later" when Schlimme came to his house. Younce also talked with Schlimme two or three times on the telephone during the months Younce did not see Schlimme. Schlimme was arrested at his grandmother's house in Maryland five months after the event. None of this evidence proves flight. Mere change of residence is not flight. None of the evidence is inconsistent with the hypothesis that

Schlimme moved to Maryland for a job or because of other personal reasons that were irrelevant to the events on April 8, which were not proved to be known to Schlimme.

Even if it is assumed that Schlimme fled, the instruction should not have been given because the third inference (from consciousness of guilt to consciousness of guilt concerning the crime charged) cannot be drawn. The Commonwealth contends that Schlimme was believed to have broken into an automobile and stolen items. The hypothesis that he fled because of guilt of that offense has not been eliminated. The evidence also does not eliminate the hypothesis that Schlimme was in Maryland for reasons unknown to the Commonwealth.

> The inference from proof of an unfocused consciousness of guilt to consciousness of guilt concerning the crime charged has proven especially problematic. Flight and concealment of identity can be consistent with innocence, or with guilt of misconduct unknown to the Government.

*Silverman*, 861 F.2d at 581. The jury was not instructed that "flight alone is no more consistent with guilt than innocence." *Merritt v. State*, 523 So. 2d 573, 574 (Fla. 1988).

For another equally significant reason, Schlimme's presence in Maryland five months after the killing of the victim cannot be considered flight. No evidence proved when, during the five month period, Schlimme went from Virginia to Maryland. "A flight instruction should not be given where, for example, the evidence merely shows the defendant was arrested some time after the crime and miles away from the scene, since such evidence, standing alone, does not support an inference of guilt." *Pitts*, 273 Cal. Rptr. at 911, 223 Cal. App. 2d at 877.

> "The immediacy requirement is important. It is the instinctive or impulsive character of the defendant's behavior, like flinching, that indicates fear of apprehension and gives evidence of flight such trustworthiness as it possesses. The more remote in time the alleged flight is from the commission or accusation of an offense, the greater the likelihood that it resulted from something other than feelings of guilt concerning that offense."

*Myers*, 550 F.2d at 1051 (citation omitted).[4]

For all of these reasons, I would hold that the trial judge erred in granting the flight instruction and erred in failing to strike the evidence.

---

[4] "The use of evidence of flight has been criticized on the grounds that the second and fourth inferences are not supported by common experience and it is widely acknowledged that evidence of flight or related conduct is 'only marginally probative as to the ultimate issue of guilt or innocence.' " *United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir. 1977) (citation omitted); *see also Wong Sun v. United States*, 371 U.S. 471, 483-84 n.10 (1963).