COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Moon, Judges Coleman and Fitzpatrick
Argued at Salem, Virginia


KAREN WATTS JOHNSON

v.   Record No. 0703-94-3            MEMORANDUM OPINION*
                                         PER CURIAM
COMMONWEALTH OF VIRGINIA              JANUARY 30, 1996

          FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
                J. Samuel Johnston, Jr., Judge

          John R. Alford (Mark J. Peake; Caskie &
          Frost, on briefs), for appellant.

          John H. McLees, Jr., Assistant Attorney
          General (James S. Gilmore, III, Attorney
          General, on brief), for appellee.


     Karen Watts Johnson appeals her convictions of hit and run,

with personal injury resulting, and improper driving.  Mrs.

Johnson argues that the Commonwealth failed to prove the charges

beyond a reasonable doubt.  We agree, and reverse the

convictions.

     On March 19, 1993, at approximately 12:40 p.m., an accident

occurred that involved four vehicles.  The first vehicle came to

a stop, and then the second and third vehicles stopped as well.

The fourth car, allegedly driven by Mrs. Johnson, did not stop

and ran into the rear of the third vehicle.  That vehicle then

collided with the second, and the second with the first.  The

driver of the fourth vehicle left the scene of the accident.  The

first three vehicles were significantly damaged, and the driver

---

     *Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

of the second vehicle had to seek medical attention.

The driver of the third vehicle, Rose Marie Burnette, was the only one who saw the driver of the fourth vehicle. She described the driver as a female with shoulder length hair that was either medium brown or sandy brown-blond in color and who did not wear glasses. She testified that the car that hit her was red, but could not provide any other information about the car.

The car that hit the rear bumper of Mrs. Burnette's car left an impression in the shape of the top portion of a license tag. The tops of the characters embossed on that tag were visible. The police determined combinations of characters that might have made those impressions. They then ran DMV checks in the local area to find license plates with those combinations of characters. They did not run checks statewide; the officer testified that this "would have been impossible because there were so many different combinations."

The police checked two or three license tags in the local area and found that "they did not match." They then went to Mrs. Johnson's house, located between five and seven miles from the scene of the accident, to check her vehicle. The vehicle was red. The front tag had a hole in it between the "g" and the "i" in "Virginia." The passenger side headlight was out of adjustment, there were two scrape marks under the car, and the mounting bracket for the tag was loose and broken.

The Commonwealth presented two sets of forensic evidence to support their case against Mrs. Johnson. First, they presented a

lab analysis comparing paint from Mrs. Johnson's car to red paint left on the rear of Mrs. Burnette's car.  The lab report stated that the paints "matched in colors, types, textures, and layer sequence and were similar in inorganic compositions.  These paints could have had a common origin."

The Commonwealth also presented testimony from a forensic impressions examiner, Mark Hallett.  Hallett made life-size photographs of the license tag and the bumper, using intensive lighting to make the impressions show very clearly.  He then made a polyurethane impression of the tag, laminated it, and placed it over the photograph of the bumper for comparison.  Hallett testified that the characters on the tag fit over the partial impression of characters on the bumper.

After examining the license plate, Hallett determined that it had been damaged by an impact that caused it to bend over the bolt on the mounting bracket.  He testified that the angle of the bumper receiving the impression fit with the license plate as it was bent.  He also testified that the partial character impressions on the bumper matched up with those on the tag, and that when this was done, the impression left by the mounting bolt on the tag matched an impression left on the bumper.  However, Hallett also testified that the partial character impressions on the bumper could have been made by different combinations of letters and numbers than those on Mrs. Johnson's tag.

Mrs. Johnson testified that on the day in question, she had worked third shift and then took her son to school at 8:00 a.m.,

ran other errands, and returned home by 9:30 or 10:00 a.m. She testified that at noon, approximately the time of the accident, she was watching a basketball game with her husband and a friend. She did not leave the house until it was time for her to work at 5:00 p.m.

Mrs. Johnson's next door neighbor, Mrs. Cumby, testified that she saw Mrs. Johnson's car outside her house at approximately 12:30 p.m. She noticed the car because it was unusual for Mrs. Johnson to be home during the day, and she remembered that particular day because she had been ill. Mrs. Cumby had not met Mrs. Johnson at the time of the accident.

Both Mrs. Johnson's husband and the Johnsons' friend, James Jones, testified that they were watching the "March Madness" basketball games at the Johnsons' house on the day in question. They watched the Wake Forest game, which was on at midday, and then the Virginia game. They testified that while they were watching, Mrs. Johnson watched also and did not leave the house.

Mrs. Johnson testified that her license plate was damaged when her great uncle, who had since died, backed up into her car in the church parking lot. Her mother testified that she was in the parking lot at the time and heard the crash. Mrs. Johnson testified that she did not know where the two scrape marks on her bumper came from or why one of her headlights was out of alignment.

On appeal, the evidence is viewed in the light most favorable to the Commonwealth, granting it all reasonable

inferences fairly deducible therefrom. The verdict of the jury will not be disturbed unless it is plainly wrong or without evidence to support it. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

Whether a conviction is supported by evidence sufficient to prove guilt beyond a reasonable doubt is not a question of fact but one of law. A conviction based upon a mere suspicion or probability of guilt, however strong, cannot stand. Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986). The evidence relied on by the Commonwealth must exclude all reasonable conclusions inconsistent with that of guilt. Sutphin v. Commonwealth, 1 Va. App. 241, 248, 337 S.E.2d 897, 900 (1985).

Mrs. Burnette's description of the driver and the car were very general in nature and, with respect to the driver's hair color, inconsistent. The bulk of the Commonwealth's case consisted of physical evidence, presented by forensic examiners employed by the Commonwealth. The major portion of that evidence concerned matching characteristics of Mrs. Johnson's license tag and impressions left on Mrs. Burnette's bumper.

Although Hallett testified it was "highly unlikely" that something other than Mrs. Johnson's tag had made the impressions, he also acknowledged that other combinations of letters and numbers could have left the partial character impressions on the bumper. The police acknowledged that in identifying license tags that might have left the impressions, they checked only "local" tags (the "local" area was not defined) because there would have

- 5 -

been far too many to check statewide. Even if the police identified all potential combinations locally, a claim they did not make, by their own admission there were likely numerous other tags in the state that could have left the impressions. Moreover, none of the testimony excluded the possibility that one of these tags, mounted with the same sort of bracket and bolt assembly as Mrs. Johnson's tag, could have made the impressions found on Mrs. Burnette's bumper.

Similarly, the paint evidence did not exclude reasonable possibilities other than guilt. The comparative analysis did not positively identify the two paint samples as coming from an identical source, but merely proved that such a possibility existed. Without expert testimony which explained the probability of two paint samples possessing similar properties, the jury had no standard to evaluate the weight or significance of such evidence. See Sutphin, 1 Va. App. at 247, 337 S.E.2d at 900.

A criminal defendant is entitled to the benefit of a reasonable doubt arising from the evidence of the Commonwealth as well as his own evidence. Bridgeman, 3 Va. App. at 528, 351 S.E.2d at 602. Although the circumstantial evidence may have shown that Mrs. Johnson's car could have been, or probably was, the car involved in the accident, suspicion or probability of guilt is not sufficient to sustain a conviction. Boothe v. Commonwealth, 4 Va. App. 484, 492, 358 S.E.2d 740, 745 (1987). Taken as a whole, the Commonwealth's evidence did not exclude

reasonable hypotheses of Mrs. Johnson's innocence, and indeed raised reasonable doubt as to her guilt.  See also Allen v. Commonwealth, 211 Va. 805, 180 S.E.2d 513 (1971) and Whitlow v. Commonwealth, 198 Va. 165, 93 S.E.2d 127 (1956).  In both of these hit and run cases, the Supreme Court set aside jury verdicts based on circumstantial evidence, holding that the circumstances did not warrant a finding of guilt beyond a reasonable doubt.  The same is true here.

We agree with the trial judge, who stated at several points throughout the trial that the evidence was weak and that he could not convict based on the evidence presented.  A conviction cannot be sustained if no rational trier of fact could find guilt beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307 (1989).  We find that the evidence, as a matter of law did not meet the Jackson standard.  Therefore, we reverse the convictions.

Reversed.