COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Frank and Humphreys
Argued at Chesapeake, Virginia


SHERRON MILTON RICKS

                                        OPINION BY
v.   Record No. 1961-01-1      JUDGE ROBERT P. FRANK
                                       DECEMBER 10, 2002
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                    Jerome James, Judge

        Darell Sayer (Ferrell, Sayer & Nicolo, on
        brief), for appellant.

        Susan M. Harris, Assistant Attorney General
        (Jerry W. Kilgore, Attorney General, on
        brief), for appellee.


     Sherron Milton Ricks (appellant) was convicted in a bench

trial of murder, in violation of Code § 18.2-32, and use of a

firearm in the commission of murder, in violation of Code

§ 18.2-53.1. On appeal, he contends the trial court erred in

admitting evidence of his flight subsequent to the offense. For

the reasons stated, we affirm.

                          BACKGROUND

     At 8:00 a.m. on September 7, 2000, officers of the Norfolk

Police Department found Desmond Boyd "laying on the ground,"

dead from a gunshot wound to the back of his head. A woman who

lived near the scene heard angry voices and one gunshot at about

2:30 that morning.

At 4:00 that morning, appellant arrived at the residence of Anthony Batey. He was "out of breath . . . like he had been running." Appellant said he had been shooting in the air and running before arriving at Batey's home. While he was there, appellant sold Batey a .38 weapon for $150. At trial, Batey identified Commonwealth's Exhibit 1 as the weapon he purchased from appellant.

On September 12, 2000, Norfolk Police Officer Brian Atwood recognized a car, a Dodge Stratus, that appellant "would frequently drive." Atwood knew that appellant "had outstanding warrants" and that a Norfolk detective "wanted him questioned for a homicide."

Officer Atwood was in uniform and driving a marked vehicle when he noticed the Stratus. When he turned around to drive by the car again, he "noticed that it was moving." The officer followed the car and eventually saw appellant was the driver. As the Stratus turned into a parking lot, Officer Atwood activated his lights. Appellant initially "motion[ed] like he [was] going to a parking space." However, as the officer exited his vehicle, appellant "thr[e]w his vehicle in reverse, [came] back toward [the officer], [threw] it back in drive, [spun] around the parking lot, and a pursuit initiated from there."

With his lights and siren on, Officer Atwood pursued appellant, who drove the wrong way down one-way streets, drove up onto sidewalks, and ran through stop signs and red lights.

The pursuit lasted seventeen minutes.  According to Atwood, the pursuit "was long enough that we had detective units, we had called metro-tactical units, traffic units, and everything to start to block off intersections trying to keep [appellant] contained in a certain area."  When the officers got "out of their cars, [appellant would] go over the curb driving toward the police officers."  Upon the police coming "up to the side of [appellant's car], he tried to ram us from side to side."

Appellant's car finally stopped when there was "some type of failure or something to the vehicle."  Appellant was taken into custody.  In a search incident to arrest, Atwood found a "small bag of marijuana" on appellant.

During the initial police interrogation, appellant denied any involvement in the shooting of Boyd.  When he later asked to resume the interrogation, appellant explained he and Boyd had agreed to "rob a weed spot."  However, when they got there, they abandoned their plans because "too many people [were] present." As they were leaving, they began to argue over some of appellant's missing property.  Appellant believed Boyd had stolen the items.  He told Boyd he was going to keep Boyd's gun, then in his possession, in exchange for the missing items.  As they talked, "they got angry, [Boyd] got close and they started to struggle with the gun.  [Appellant] said it went off three times while they were struggling."  Appellant told the police

that, when he realized Boyd was dead, he went to Batey's house and sold the gun.

At trial, appellant testified he lied in his statement to the police. He said the detective intimidated him into telling a false story about "this fight over the gun and the accidental shooting."

ANALYSIS

Appellant contends the trial court erred in admitting evidence of his flight on September 12, 2000. Essentially, appellant argues that, to admit evidence of flight, the Commonwealth must prove a nexus between the "consciousness of guilt" and the specific crime charged. Appellant maintains the "outstanding warrants" and the marijuana found on him were plausible reasons for his flight that were unrelated to the murder.

> "The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). "Evidence which 'tends to cast any light upon the subject of the inquiry' is relevant." Cash v. Commonwealth, 5 Va. App. 506, 510, 364 S.E.2d 769, 771 (1988) (quoting McNeir v. Greer-Hale Chinchilla Ranch, 194 Va. 623, 629, 74 S.E.2d 165, 169 (1953) (internal quotations omitted)).

Summerlin v. Commonwealth, 37 Va. App. 288, 293, 557 S.E.2d 731, 734 (2002).

"Flight following the commission of a crime is evidence of guilt, and the jury may be so instructed."  Clagett v. Commonwealth, 252 Va. 79, 93, 472 S.E.2d 263, 271 (1996). Evidence of flight from authorities that occurred days, or even months, after a crime is admissible, as "[a]ny flight at a time when it may be to avoid arrest, prosecution, or confinement tends to show a consciousness of guilt."  Langhorne v. Commonwealth, 13 Va. App. 97, 103, 409 S.E.2d 476, 480 (1991).

We agree with appellant that, in order to show a "consciousness of guilt," a nexus must exist between the flight and the alleged offense.  See Jarrell v. Commonwealth, 132 Va. 551, 569, 110 S.E. 430, 436 (1922) (finding the trial court properly refused an instruction on flight as all the evidence indicated Jarrell left the county to join the army, pursuant to plans made prior to the homicide).  The evidence must establish appellant had some knowledge that he might be a suspect in the killing.

This knowledge can be proven in a number of ways.  For example, if a defendant fails to appear for trial or flees from the police after a capias had been issued for his failure to appear, then knowledge may be presumed.  See, e.g., Langhorne, 13 Va. App. at 101-02, 409 S.E.2d at 479.  Yet, introduction of evidence of flight does not depend upon issuance of a warrant. See Schlimme v. Commonwealth, 16 Va. App. 15, 18, 427 S.E.2d 431, 433-34 (1993) (ruling that leaving the scene of a homicide,

prior to discovery of the crime by the police, is legitimate evidence of flight).[1]

In Schlimme, the defendant argued a flight instruction should not be given "because the Commonwealth did not show that he had any knowledge of the charges against him at the time he fled."  Id. at 19, 427 S.E.2d at 434.  This Court rejected that argument because appellant admitted he was involved in the shooting and because the nature of the crime was such "that the murderer would have known that the crime would be discovered soon after its commission."  Id.

As in Schlimme, appellant here admitted to the police that he was involved in the shooting, placing himself at the scene of the murder.[2]  He knew the victim was dead.  He knew the body would be discovered, given the area where the shooting occurred. He knew the police would conduct an investigation and suspicion would be directed at him.  Thus, the evidence revealed that appellant had knowledge of the potential murder charge against him at the time he sped away from the officer.[3]  A nexus existed

---

[1] In Schlimme, appellant did not object to the admissibility of flight evidence, only to an instruction on flight.

[2] Although appellant recanted his statement to the police when he testified at trial, we must examine the evidence in the light most favorable to the party prevailing below.  See Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

[3] During oral argument, appellant argued the trial court did not know about the confession when ruling on admission of the flight evidence.  However, we consider the entire record on appeal, not just the evidence before the court at the time of the

between appellant's flight from the police and the present offense.

While appellant argues his flight could have been the result of the outstanding warrants or his possession of marijuana, these potential multiple causes for the flight do not obviate the "consciousness of guilt" nexus with the murder. See, e.g., Leonard v. Commonwealth, 39 Va. App. 134, 571 S.E.2d 306 (2002) (affirming the admission of flight evidence where Leonard had several charges pending). Although some evidence incidentally disclosed appellant may have been guilty of other crimes, the evidence still proved consciousness of guilt related to this homicide. As this Court said in Langhorne, "[An appellant] cannot avoid the inferences which the fact finder may draw from his actions because other charges were pending against him and he may also have been evading those charges." 13 Va. App. at 103, 409 S.E.2d at 480. As the First Circuit explained in discussing use of an alias as evidence of guilt:

> Certainly we find little to commend
> defendant's broad proposal to bar "alias"
> evidence whenever a defendant has committed
> more than one crime. Under it, the more
> crimes a person commits using an alias, the
> less able the prosecutor would be to use the
> alias as evidence. Such a rule would ignore

ruling. See Wells v. Commonwealth, 6 Va. App. 541, 548, 371 S.E.2d 19, 23 (1988) ("'If the evidence given on the trial was sufficient, as we think it was, to sustain the introduction of the . . . evidence, it is immaterial that there was an inadequacy of evidence when application was made for its return.'" (quoting Carroll v. United States, 267 U.S. 132, 162 (1925) (ellipsis in original))).

                    the substantial possibility that the
                    defendant is using the alias to evade
                    detection for all of his crimes, including
                    the one charged.

United States v. Boyle, 675 F.2d 430, 432-33 (1st Cir. 1982).

     Appellant relies on United States v. Myers, 550 F.2d 1036

(5th Cir. 1977), to support his position that inadequate

evidence of a nexus between his flight and the murder was

presented by the Commonwealth.  Myers used a four-pronged test

to determine that the evidence of flight was more prejudicial

than probative and, therefore, should be excluded.  Id. at 1049.

However, this case is distinguishable on its facts.[4]

     Myers never admitted knowledge of the Florida robbery on

which he was tried, id. at 1039, and nothing at trial proved he

knew he was a suspect when he allegedly fled, id. at 1048.  The

appellate court also found the testimony did not support an

inference that Myers fled from police.  Id. at 1049-50.  Here,

appellant admitted he was at the scene and claimed he

accidentally shot the victim while arguing over the gun.

Clearly, he had knowledge of the crime.  He does not argue the

evidence was insufficient to prove flight occurred.

     We conclude that, while appellant's flight might have been

attributable to several causes, "consciousness of guilt" could

be inferred by the trial court if any one of those causes was

_____

     [4] We make no ruling on the applicability of the Fifth
Circuit's four-prong test to Virginia cases involving evidence
of flight.

the instant offense. Myers is not applicable to the facts of this case. See Leonard, 39 Va. App. at 151, 571 S.E.2d at ___; Langhorne, 13 Va. App. at 102, 409 S.E.2d at 480.

Appellant also argues the trial court erred in allowing Officer Atwood to testify regarding the details of his flight, including his violations of the traffic code. At oral argument he contended this evidence was more prejudicial than probative. However, he did not object to the officer's testimony on this ground at trial.

Generally, in order to preserve an argument for appeal, a specific objection must be made at trial, giving the trial court an opportunity to correct any error that may occur. See Clark v. Commonwealth, 30 Va. App. 406, 411-12, 517 S.E.2d 260, 262 (1999) (explaining that, by preserving one sufficiency argument, an appellant does not preserve additional sufficiency issues for appeal); Redman v. Commonwealth, 25 Va. App. 215, 220, 487 S.E.2d 269, 272 (1997) (noting that, if a trial court could have corrected the error, but no objection was made, then appellate courts should not consider the issue except in rare instances). Therefore, we will not consider appellant's argument regarding the details of his flight. See Rule 5A:18.

We find the trial court did not abuse its discretion in admitting the evidence of appellant's flight.  We affirm the convictions.

<u>Affirmed.</u>

Benton, J., concurring.

When the police officer testified concerning Sherron Milton Ricks's refusal to stop his vehicle after the officer activated his emergency lights, Ricks's attorney objected to "the relevance" of the testimony of flight. It has long been the rule that in appropriate circumstances, evidence of flight is a circumstance that the trier of fact may consider as proof of consciousness of guilt. Jenkins v. Commonwealth, 132 Va. 692, 696, 111 S.E. 101, 103 (1922). Thus, at first blush, the general rule appears to suggest the objection was unwarranted. Ricks's attorney argued, however, that the evidence was "maybe flight from something he did that evening[, but] . . . not evidence of flight from anything that happened on the 7th," which was the date of the homicide. Thus, Ricks's attorney asserted the evidence was too tenuous to establish a link between Ricks's flight on September 12 and consciousness of guilt of the homicide of Desmond Boyd for which Ricks was on trial.

Analytically, evidence of flight is a basis from which a trier of fact may infer guilt by conduct, id.; United States v. Myers, 550 F.2d 1036, 1049 (5th Cir. 1977), "but it should be cautiously considered, because it may be attributable to a number of other reasons other than consciousness of guilt" for the crime charged. Jenkins, 132 Va. at 696, 111 S.E. at 103. See United States v. Beahm, 664 F.2d 414, 419-20 (4th Cir. 1981) (holding that "an inference [of guilt from flight] would be completely unfounded where a defendant flees after 'commencement of an investigation' unrelated to the crime charged, or of which the defendant was unaware"). "If the evidence is insufficient 'to

support a chain of unbroken inferences from the defendant's behavior to the defendant's guilt of the crime charged,' a flight instruction is invalid and inappropriate." Schlimme v. Commonwealth, 16 Va. App. 15, 28, 427 S.E.2d 431, 439 (1993) (Benton, J., dissenting) (citation omitted).

No evidence tended to prove that an arrest warrant had been issued for the homicide or that Ricks knew he was being investigated for the homicide. On the other hand, the evidence proved that when Ricks failed to heed the signal to stop, the police "had outstanding warrants" for Ricks's arrest for other crimes. The officer had attempted to arrest Ricks on those outstanding warrants several days earlier, when he "stopped some people . . . out in front of [Ricks's] residence . . . to see if he was . . . one of the people." When the officer detained those people, Ricks "was not . . . [in the group but his] brother was there." This evidence tends to prove Ricks was aware the police officers were seeking to arrest him on those outstanding warrants. Thus, when Ricks fled as the officer sought to detain him in his automobile, Ricks had not been accused of the homicide. Furthermore, the evidence proved the officer arrested Ricks only for those other offenses, not for homicide.

In my view, the difficulty with admitting this evidence of "flight" in the homicide prosecution is that it has only slight probative value in proving consciousness of guilt concerning the homicide and that this slight probative value is outweighed by the prejudice it could engender. The Supreme Court has "consistently doubted the probative value in criminal trials of evidence that the accused fled the scene of an actual or supposed

crime."  Wong Sun v. United States, 371 U.S. 471, 483 n.10
(1963).  See also Schlimme, 16 Va. App. at 30 n.4, 427 S.E.2d at
440 n.4 (Benton, J., dissenting) (noting "it is widely
acknowledged that evidence of flight . . . is 'only marginally
probative as to the ultimate issue of guilt or innocence'").  The
evidence of flight in this case was prejudicial to Ricks because
it allowed the trier of fact to infer consciousness of guilt for
this homicide when the evidence strongly suggests other impetus
for the conduct.  Cumbee v. Commonwealth, 219 Va. 1132, 1137-38,
254 S.E.2d 112, 116 (1979).  Ricks was further prejudiced because
the admission of this evidence placed upon him

> an unconscionable burden of offering not
> only an innocent explanation for his
> departure but guilty ones as well in order
> to dispel the inference to which the
> government would apparently be entitled that
> an investigation calling upon [Ricks] could
> have but one purpose, namely, his
> apprehension for the crime for which he is
> ultimately charged.

Beahm, 664 F.2d at 420.  I would hold the evidence was
inadmissible for these reasons.

The issue then becomes whether the admission of the evidence
"was harmless on this record."  Cumbee, 219 Va. at 1138, 254
S.E.2d at 116.  See also United States v. Obi, 239 F.3d 662, 666
(4th Cir. 2001).  I believe it was.

The evidence at trial proved that after the pursuit the
officer arrested Ricks on charges unrelated to the homicide.
While in custody on those charges, Ricks waived his Miranda
rights and spoke to other officers who were investigating the
homicide.  After initially denying involvement in the homicide,

Ricks admitted being with Boyd for the purpose of committing robberies. He explained that he and Boyd argued, that they struggled over Boyd's gun, and that Boyd suffered three gunshot wounds during the struggle for the gun. Ricks also told the officer he later sold the gun to Anthony Batey. After a stenographer prepared a written version of the recorded statements, Ricks signed the written confession.

Other evidence corroborated Ricks's confession. Batey testified that Ricks sold him the gun. The evidence also proved the police recovered the gun with Batey's assistance and sent it for forensic testing. The forensic examiner testified that the bullet, which had been recovered from Boyd's body, was fired from the gun the police recovered.

Ricks testified and denied that he killed Boyd. He said that he had consumed alcohol and marijuana the day the police arrested him and that he had given a false confession after the police intimidated and threatened him. He also testified that he sold a different gun to Batey than exhibited at trial.

From the circumstances surrounding the arrest and interrogation, the trial judge found no credible evidence that Ricks was under the influence of any substance when he confessed to the killing. He also found that the confession was voluntary and credible, that Ricks's trial testimony was not believable, and that the evidence was sufficient to prove beyond a reasonable doubt Ricks committed murder using the firearm.

Although the trial judge admitted in evidence the circumstances surrounding the arrest, the prosecutor did not again comment upon the issue of flight during trial or argument.

The significant and overwhelming fact supporting the conviction was Ricks's confession.  I believe "we can say, 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole,' that it plainly appears that [Ricks] has had a fair trial and the verdict and judgment were not substantially affected by . . . [the error]."  Clay v. Commonwealth, 262 Va. 253, 261, 546 S.E.2d 728, 732 (2001).  Thus, the error was harmless.

For these reasons, I concur in the judgment affirming the convictions.