COURT OF APPEALS OF VIRGINIA

Present: Judge Beales, Causey and Senior Judge Petty

JAMAR MONTEL EDMONDS

v.      Record No. 1584-23-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
SEPTEMBER 3, 2024

FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG AND
COUNTY OF JAMES CITY
Holly B. Smith, Judge

(Charles E. Haden, on brief), for appellant.

(Jason S. Miyares, Attorney General; Susan Hallie Hovey-Murray,
Assistant Attorney General, on brief), for appellee.


Following a bench trial, the Circuit Court for the City of Williamsburg and the County of

James City convicted Jamar Montel Edmonds of possession of a firearm by a convicted violent

felon under Code § 18.2-308.2. By final order on September 13, 2023, the trial court sentenced

Edmonds to the mandatory minimum of five years of incarceration. Edmonds argues on appeal that

the court erred in denying his motion to strike the evidence. After examining the briefs and record

in this case, the panel unanimously holds that oral argument is unnecessary because "the dispositive

issue or issues have been authoritatively decided, and the appellant has not argued that the case law

should be overturned, extended, modified, or reversed." Code § 17.1-403(ii)(b); Rule 5A:27(b).

We also find the evidence sufficient to support Edmonds's conviction, and thus, we affirm the trial

court below.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

On February 7, 2022, Officers Walter Whit and Caleb Crawford of the James City County Police were asked to assist a Newport News officer executing an arrest warrant for Edmonds,[2] believed to be at Longhill Grove Apartments ("apartments") in James City County. Officers Whit and Crawford went to the apartments and encountered Edmonds at approximately 11:20 a.m. Edmonds was evasive, refusing to identify himself or state his date of birth, and claiming he had a twin. When told he was being detained on an outstanding warrant in Newport News involving a firearm, Edmonds broke free from the officers and fled on foot. He scaled a six-foot fence, which separated the apartments and the adjacent subdivision of single-family homes and the Burton Woods apartment community. Officers chased Edmonds as far as the fence, but lost sight of him once he scaled it. They immediately established a perimeter for the surrounding area and remained on scene. Investigators Josh Drury and J.A. Ernst of the James City County Police saw Edmonds flee, pursued, and then coordinated a search in the nearby neighborhood of Burton Woods.

Additional officers and resources responded because of Edmonds's flight and the allegation that he used a firearm in the commission of a felony six days earlier. Drury found Edmonds crouching under the deck of a residence on Mulberry Lane[3] approximately 30 minutes later and arrested him. Deputy Octavianl of the York County Sheriff's Office conducted a

---

[1] The Court reviews the facts in the light most favorable to the Commonwealth, the prevailing party in the trial court. *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018). We "regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *McGowan v. Commonwealth*, 72 Va. App. 513, 516 (2020).

[2] The warrant charged Edmonds with using a firearm in the commission of a felony on February 1, 2022, in Newport News.

[3] The Mulberry Lane area was the locus of the police perimeter in the adjacent subdivision.

canine article search for a possible firearm along Edmonds's flight path with her dog Ghost. Ghost, trained to pick up fresh human scent, alerted only on a pile of leaves beside a tree about 20 feet from the fence. The police observed a green and black Taurus handgun mostly uncovered on the leaves approximately two-and-a-half hours after Edmonds's flight. Investigator Ernst retrieved the firearm; Investigator Drury subsequently inspected and tested the firearm and determined it operable.

J. Kevin Daum owned the home which abutted the wooded area where Ghost found the firearm. Daum testified that the wooded area beside the fence was owned by the Mulberry Place Homeowners Association and was a drainage field leading to a retention pond. He further stated that he had never seen anyone in that area except work crews cleaning up after a storm.

At the close of its case-in-chief, the Commonwealth submitted a thumb drive containing its exhibits including photographs of the area and the firearm in situ, captures of the electronic maps depicting Edmonds's flight and point of arrest, and orders of Edmonds's prior convictions as a felon. Edmonds moved to strike the evidence as insufficient to sustain a conviction for possession of a firearm by a violent felon. Edmonds did not introduce any evidence.[4]

The trial court denied Edmonds's motion to strike and found him guilty of a violent felon in possession of a firearm. In finding the evidence sufficient that Edmonds was the person who discarded the firearm as he fled from the officers, the trial court relied on Ghost's finding the firearm based on fresh human scent along the path Edmonds took after scaling the fence and where he hid under the deck of a residence. The trial court further relied on Edmonds's evasiveness when approached by the officers even before being told of the outstanding warrant and his subsequent flight as consciousness of guilt. The court imposed the mandatory minimum

---

[4] Edmonds did not renew the motion to strike at the end of all the evidence but argued it in closing.

sentence of five years of incarceration.[5]  On appeal, Edmonds argues that the evidence was insufficient to prove that he was in possession of the Taurus handgun found in the drainage area.

ANALYSIS

Standard of Review

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'"  *Konadu v. Commonwealth*, 79 Va. App. 606, 613 (2024) (quoting *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original)).  The question on appeal is not if the Court believes the evidence at trial was sufficient, but rather if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Cappe v. Commonwealth,* 79 Va. App. 387, 398 (2024) (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016)).  If the evidence is sufficient to support the conviction, "the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial."  *Washington v. Commonwealth*, 75 Va. App. 606, 615 (2022) (quoting *McGowan*, 72 Va. App. at 521).  Further, the Court does not distinguish between direct and circumstantial evidence because the trial court "is entitled to consider all of the evidence, without distinction, in reaching its determination."  *Commonwealth v. Moseley*, 293 Va.  455, 463 (2017) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)).

Sufficiency of the Evidence

Edmonds's single argument on appeal is that the trial court erred in denying his motion to strike because the evidence was insufficient to prove that he possessed the firearm when he fled. "[W]hen the evidence is wholly circumstantial . . . all necessary circumstances proved must be

---

[5] Edmonds did not dispute his prior violent felony conviction or the testimony that the Taurus handgun was an operable firearm.

consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence." *Haas v. Commonwealth*, 299 Va. 465, 468 (2021) (second alteration in original) (quoting *Rogers v. Commonwealth*, 242 Va. 307, 317 (1991)). "This requires an unbroken evidentiary chain of necessary circumstances, which satisfies 'the guarded judgment that both the corpus delicti and the criminal agency of the accused have been proved to the exclusion of any other rational hypothesis and to a moral certainty.'" *Moseley*, 293 Va. at 463 (quoting *Wright v. Commonwealth*, 292 Va. 386, 397 (2016)). Nevertheless, "'[t]he hypotheses which must be thus excluded are those which flow from the evidence itself, and not from the imaginations of' the defense." *Haas*, 299 Va. at 469 (alteration in original) (quoting *Cook v. Commonwealth*, 226 Va. 427, 433 (1983)).

Edmonds argues that because there was no direct physical or forensic evidence presented connecting him to the Taurus handgun found by Ghost, the Commonwealth failed to prove possession beyond a reasonable doubt. He further argues that the firearm could have been left in the wooded area by someone else at some other time. We disagree.

Here, the evidentiary chain of circumstances was unbroken. During daytime, Edmonds encountered and fled from law enforcement officers on one side of the fence which he scaled to escape. Other officers immediately responded to the residential area on the other side of the fence and searched for Edmonds along his flight path. The police found Edmonds hiding under a deck of a house and arrested him. Ghost located the firearm in the private uninhabited drainage field directly along Edmonds's flight path and his hiding place. There was no debris on the firearm, no testimony of similar items being found in the drainage field, no evidence of anyone other than Edmonds and law enforcement in the specific area, and no false positives on the scent. These events took place in less than three hours.

In *Johnson v. Commonwealth*, 12 Va. App. 150 (1991), we found sufficient evidence of possession of narcotics where Johnson fled along a hedgerow after being approached by police, and a previously unseen plastic bag of cocaine was found "in a relatively private area" at precisely the point where the pursuit began. *Id.* at 153. Here, using a police canine trained to search for fresh human scent, the Taurus handgun was discovered in a private wooded drainage field directly along Edmonds's path within three hours from the start of Edmonds's flight. The firearm was within 20 feet of the fence Edmonds scaled and was free of external debris. Four officers observed Edmonds from the time he took flight until he scaled the six-foot fence. A police perimeter was established and maintained in the flight path and the adjoining neighborhood from the time Edmonds fled to the time of his arrest.

"It is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct are admissible as evidence of consciousness of guilt, and thus of guilt itself." *Langhorne v. Commonwealth*, 13 Va. App. 97, 102 (1991) (quoting *United States v. Ballard*, 423 F.2d 127, 133 (5th Cir. 1970)). The trier of fact must consider the "nexus . . . between the flight and the alleged offense." *Ricks v. Commonwealth*, 39 Va. App. 330, 335 (2002) (citing *Jarrell v. Commonwealth*, 132 Va. 551, 569 (1922)). The fact finder may reasonably draw the inference from the defendant's evasive actions and the pending charges that he was evading those as well. *Id.* at 336 (citing *Langhorne*, 13 Va. App. at 103).

Edmonds's actions were evasive even before the officers told him of the outstanding warrant when he refused to provide his name or date of birth and randomly claimed to have a twin brother. He pulled away when the officers sought to detain him, scaled a six-foot fence, fled through a wooded drainage field into the adjacent neighborhood, and was found hiding

under the deck of a residence.  An operable firearm was located by a police canine using fresh human scent directly along Edmonds's flight path a mere 20 feet from the fence.

From Edmonds's actions, the absence of evidence of other humans or freshly touched debris in the area of the flight, consciousness of guilt, and his prior convictions, a reasonable finder of fact could conclude beyond a reasonable doubt that Edmonds was guilty of possessing a firearm after conviction of a violent felony.

CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*